Jeffrey J. GALLEGO on behalf of himself and all others similarly situated, Plaintiffs,

v.

NORTHLAND GROUP, INC., and John Does 1–25, Defendants.

No. 14 Civ. 7115(AKH).

United States District Court, S.D. New York.

April 27, 2015.

Benjamin Jarret Wolf, Joseph Karl Jones, Law Offices of Joseph K. Jones, LLC, New York, NY, for Plaintiffs.

Jonathan M. Robbin, Schulte Roth & Zabel LLP, New York, NY, for Defendants.

## OPINION AND ORDER DENYING CLASS CERTIFICATION AND QUESTIONING SUBJECT–MATTER JURISDICTION

ALVIN K. HELLERSTEIN, District Judge:

Plaintiff Jeffrey Gallego brought this action against Defendant Northland Group, Inc. ("NGI"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* On March 4, 2015, before an Answer had been filed and in anticipation of settlement, the parties filed a joint motion to certify a class pursuant to Fed.R.Civ.P. 23. For the following reasons, the motion is denied and Plaintiff is ordered to show cause why the case should not be dismissed for lack of subject-matter jurisdiction.

## BACKGROUND

Plaintiff is an individual who, by purchasing goods on credit, incurred financial obligations to Department Stores National Bank ("DSNB").[1] DSNB transferred the past-due obligations to NGI, a debt collector. On or around January 22, 2014, NGI sent Jeffrey Gallego a letter attempting to collect the obligation in question. The letter identified NGI as the sender, indicated that NGI is a collection agency licensed by the Minnesota Department of Commerce, and stated the name of the original creditor, the name of the store at which the debt was incurred, the original account number, and the current account balance. The letter then offered the recipient three possible methods by which to pay his bill, as well as a number to call with questions. However, the letter did not identify a *name* to call in response to the letter, which Plaintiff alleges renders it illegal.

The proposed class is estimated to include 100,000 individuals, living in New York City, who allegedly received a similar letter from NGI. Under the terms of the proposed class settlement, Defendant will deposit $17,500 to a class action pool, which represents 1% of Defendant's net worth.[2] Of this amount, Jeffrey Gallego

---

1. The Complaint does not allege the business of DSNB. According to its internet description, it appears to issue credit cards for use in department stores.

2. This is the maximum liability permitted in an FDCPA class action. 15 U.S.C. § 1692k(a) ("any debt collector who fails to comply with any provision of this subchapter ... is liable to such person ... in the case of a class action [ ] such amount as the court may allow

will receive $1,000 as the class representative. The remainder will be divided among all class members who do not opt-out of the settlement, and who timely file claims. Thus, under the settlement, if all putative class members do not opt out and timely complete and return the claim form provided in the proposed Notice, the class members would receive 16.5 cents each. Meanwhile, the agreement provides for Plaintiff's counsel to recover fees up to $35,000 from Defendant.

## CLASS CERTIFICATION

Under Rule 23, the prerequisites for maintaining a class action are numerosity, commonality, typicality, and adequacy of representation. Fed R. Civ. P. 23(a). Once these criteria are satisfied, a plaintiff must meet at least one of the criteria of Rule 23(b). Rule 23(b)(3), the applicable subsection here, requires a showing "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Another criterion concerns "the likely difficulties in managing a class action." *Id.* 23(b)(3)(D).

## SUBSTANTIVE LAW

The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *DeSantis v. Computer Credit, Inc.,* 269 F.3d 159, 161 (2d Cir.2001). It is intended to "eliminate abusive debt collection practices by debt collectors, to in-

sure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The legislative history of the passage of the FDCPA explains that [its need] arose because of collection abuses such as use of 'obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.'" *Kropelnicki v. Siegel,* 290 F.3d 118, 127 (2d Cir.2002) (quoting S.Rep. No. 95–382, at 2 (1977), 1977 U.S.C.C.A.N. 1695, 1696). The foregoing is not an exhaustive list, however. In evaluating whether a practice violates the FDCPA, the court determines whether the hypothetical "least sophisticated consumer" objectively would be deceived by the collection practice. *See Clomon v. Jackson,* 988 F.2d 1314, 1318 (2d Cir.1993).

The FDCPA also expressly contemplates parallel state debt collection laws that go beyond the FDCPA's proscriptions, such as those enacted by New York City. *See* 15 U.S.C. § 1692n ("This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter ..."); *Eric M. Berman, P.C. v. City of New York,* 895 F.Supp.2d 453, 466 (E.D.N.Y. 2012) ("[T]he FDCPA should be construed

... "not to exceed the lesser of $500,000 or 1 per centum (1%) of the net worth of the debt

collector").

to permit New York City's debt collection regulations."). The New York City regulations provide that, "[i]n addition to any practices required under any federal, state or local law," a debt collection agency must follow a number of specific rules when communicating with consumers in New York City. N.Y. City Admin. Code § 20–493.1. Most importantly for this case, the local regulations require all collectors to include in any communication "a call-back number to a phone that is answered by a natural person" and "the name of the' person to call back." *Id.*

## DISCUSSION

### A. *Deficiencies of a Class Action*

■ A class action is neither the superior nor fairer method for litigating the issues in the Complaint. A plaintiff bringing an FDCPA case individually can recover statutory damages of $1,000, while a class member can recover only his proportionate share of "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B). The parties agree that one percent of NGI's net worth is approximately $17,500, which leaves each putative class member with approximately 17 cents if all of the estimated 100,000 members make claims. Such an insignificant recovery is harmful to a putative plaintiff who might have prosecuted his claim individually but failed to opt-out of the class, and it is meaningless to everyone else. Indeed, courts routinely find that a class action is not the superior method of litigation in FDCPA cases when it would result in *de minimis* recovery, as here. *See Leyse v. Corporate Collection Svcs., Inc.*, 03–cv–8491, 2006 WL 2708451, at *9 n. 5 (S.D.N.Y.2006); *Jones v. CBE Group, Inc.*, 215 F.R.D. 558, 570 (D.Minn.2003); *Gradisher v. Check Enforcement Unit, Inc.*, 209 F.R.D. 392, 394 (W.D.Mich.2002).

Generally, class actions can be useful for cases with small individual recoveries because they create an incentive to litigate the dispute. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (explaining that, while "small recoveries do not provide the incentive for any· individual to bring a solo action ... [a] class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."). But where a statute already provides for the defendant to pay the prevailing plaintiff's attorneys' fees, as the FDCPA does, such an incentive already exists. *See* 15 U.S.C. § 1692k(a) ("any debt collector who fails to comply with ... this title [is liable for] ... the costs of the action, together with a reasonable attorney's fee as determined by the court."). Class certification thus adds nothing in terms of incentive to litigate cases like this one.

At the same time, the prospect of such a meaningless recovery is likely to deter interest among the class members, resulting in mass indifference and few or no opt outs. If, as a consequence, only a small handful make claim, they could become entitled to several thousand dollars. The prospect of mass indifference, a few profiteers, and a quick fee to clever lawyers is hardly the intended outcome for Rule 23 class actions.

A class of 100,000 recipients of NGI's letter also would be difficult to manage, and the cost of providing the "best notice practicable under the circumstances," Fed. R.Civ.P. 23(c)(2), would be disproportionate to the benefit accruing to plaintiffs. Furthermore, if the settlement fails because, for example, more than 50 putative class members opt out (as the settlement agreement provides), NGI could be forced to assert compulsory counterclaims related to its debt collection efforts against the

individual plaintiffs. I am wary of presiding over such an unwieldy class action in which individual issues so overshadow those of the class.

Because I find that certifying a class would do little more than turn NGI's settlement with Mr. Gallego into a general release of liability from all similarly situated plaintiffs at minimal extra cost while furthering a cottage industry among enterprising lawyers, class certification is denied.

### B. *Lack of Subject Matter Jurisdiction*

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Subject-matter jurisdiction "involves a court's power to hear a case" and "can never be forfeited or waived." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). A court is independently obligated to consider its subject-matter jurisdiction over a case, *sua sponte* if necessary, *Kontrick v. Ryan*, 540 U.S. 443, 455, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004), and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed R. Civ. P. 12(h)(3).

In this case, the only purported basis for subject-matter jurisdiction is federal question jurisdiction pursuant to 28 U.S.C. § 1331 and arising under the FDCPA. "The FDCPA is a consumer protection statute that prohibits certain abusive, deceptive, and unfair debt collection practices." *Marx v. General Revenue Corp.*, —— U.S. ——, 133 S.Ct. 1166, 1171 n. 1, 185 L.Ed.2d 242 (2013). However, the crux of Plaintiff's Complaint is that Defendant's failure to include the name of the person to call back violated a provision of the New York City law that also regulates debt collection practices. *See* N.Y. City Admin. Code 20–493.1(a)(iv). A claimed violation of that statute arises under New York City law and is cognizable in the New York State courts. There has been no showing that the omission of the name of a person to call back in defendant's letter constitutes an "abusive, deceptive, or unfair" practice under the FDCPA. If the matter is a question of only New York City law, it is questionable whether the Complaint properly alleges subject-matter jurisdiction. *See* 15 U.S.C. § 1692 *et seq.*

The parties have not briefed this issue. Indeed, nothing in this Order has been briefed, since the parties agreed to a settlement even before Defendant filed its Answer. Plaintiff may, by May 15, 2015, file a brief showing the basis for federal question jurisdiction. Failing such a showing, this case will be dismissed.

### CONCLUSION

The joint motion to certify the class is denied. A finding of jurisdiction is deferred pending a timely submission by Plaintiff by May 15, 2015. The Clerk shall mark the motion (Doc. No. 16) terminated.

SO ORDERED.