Gallego v. Northland Group Inc.

**UNITED STATES COURT OF APPEALS**
FOR THE SECOND CIRCUIT

————————

August Term, 2015

(Argued: December 7, 2015     Decided: February 22, 2016)

Docket No. 15-1666-cv

————————

JEFFREY J. GALLEGO, on behalf of himself and all others similarly situated,

*Plaintiff-Appellant*,

— v. —

NORTHLAND GROUP INC., JOHN DOES 1–25,

*Defendants-Appellees.*

————————

B e f o r e:

LIVINGSTON and LYNCH, *Circuit Judges*, and RAKOFF, *District Judge*.[*]

————————

————————

[*] The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

Plaintiff-appellant Jeffrey J. Gallego appeals from orders of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*) denying class certification and dismissing the complaint for lack of subject-matter jurisdiction. The district court held that Gallego's claims under the Fair Debt Collection Practices Act ("FDCPA") were not colorable, and thus that there was no federal-question jurisdiction. We hold, to the contrary, that although the FDCPA claims lack merit, they are not so frivolous that they fail to raise a colorable federal question sufficient to support federal jurisdiction. We further conclude that the district court did not abuse its discretion in denying class certification.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

————————

BENJAMIN J. WOLF (Joseph K. Jones, *on the brief*), Law Offices of Joseph K. Jones, LLC, New York, New York, *for Plaintiff-Appellant*.

JONATHAN M. ROBBIN, Blank Rome LLP, New York, New York, *for Defendant-Appellee Northland Group Inc.*

————————

GERARD E. LYNCH, *Circuit Judge*:

In this putative class action, plaintiff-appellant Jeffrey J. Gallego alleges

that defendant-appellee Northland Group Inc. ("Northland") violated the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, by sending

him and other class members a debt collection letter that gave a call-back number

but did not specify the name of the person at that number. Before a responsive

pleading was filed, Gallego and Northland sought to settle the matter on a classwide basis. The district court denied class certification, and then dismissed the complaint for lack of subject-matter jurisdiction on the ground that it did not raise a colorable federal question.

While we agree with the district court that Gallego's allegations concerning the failure to include the name of a person to call back do not state a claim under the FDCPA, we disagree that the claim is so insubstantial that it does not even support federal-question jurisdiction. We further conclude that the district court did not abuse its discretion in denying class certification. Accordingly, the judgment of the district court is AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings consistent with this opinion.

## BACKGROUND

Gallego brought this action in the Southern District of New York on behalf of himself and a class consisting of "[a]ll New York consumers who were sent letters and/or notices from [Northland], attempting to collect a debt owed to Department Stores National Bank [("DSNB")], which did not contain the name of the person to call back." J.A. 98. The complaint alleged that the failure to provide a name violated the FDCPA, and thus the asserted basis for jurisdiction

3

was that the action was one "arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331.

The letter received by Gallego, which is attached to the complaint as an exhibit and is dated January 22, 2014, identifies Northland as the sender, indicates that Northland is a collection agency licensed by the Minnesota Department of Commerce, and states the name of the original creditor (DSNB), the name of the store at which Gallego incurred the debt (Macy's) and the original account number. The letter opens with the proclamation: "IT'S A NEW YEAR WITH NEW OPPORTUNITIES!", J.A. 106, and invites Gallego to settle his account for either $190.20 over four payments or $171.18 over two payments. It offers Gallego the option to pay online, by phone or by mail, and contains a boldface disclaimer explaining that the statute of limitations on the debt has expired, but that "court rules REQUIRE YOU to tell the court that the statute of limitations has expired to prevent the creditor from obtaining a judgment." Id. Finally, it provides a telephone number for Gallego to call if he has any questions, but does not give the name of any person who can be reached at that number.

Gallego alleges that the letter's failure to provide a call-back name violates two provisions of the FDCPA: 15 U.S.C. § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," and 15 U.S.C. § 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt" and gives examples of such prohibited means. Neither provision explicitly requires debt collection letters to include a call-back name, but the New York City Administrative Code does. See N.Y.C. Admin. Code § 20-493.1(a)(iv). The complaint claims that, "[b]ecause the January 22, 2014 letter failed to provide the name of the person to call back, as required by [N.Y.C. Admin. Code. § 20-493.1(a)(iv)], [Northland] violated" §§ 1692e(10) and 1692f. J.A. 102–03.

Before Northland had filed a responsive pleading, the parties agreed to settle the lawsuit on a classwide basis. The settlement agreement provided that Northland would establish a fund totaling $17,500, an amount the agreement stated was approximately equal to 1% of Northland's net worth.[1] Of that

---

[1] Liability in a class action under the FDCPA may not "exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B).

5

amount, the settlement (if approved) would pay $1000 to Gallego, as class representative, and distribute the remaining $16,500 to class members who filed timely claims. The agreement capped attorneys' fees at $35,000. Under the agreement, class members – of whom the agreement estimated that there were around 100,000 – would have the choice to opt out of the settlement, but all class members who did not exercise that option would release all their claims against Northland relating to the letter, whether or not they filed a claim to receive part of the settlement. Finally, the agreement was to become null and void if more than fifty class members affirmatively opted out, unless Northland waived that provision.

Northland and Gallego then jointly moved for conditional approval of the classwide settlement and to certify the conditional settlement class. On April 27, 2015, the district court (Alvin K. Hellerstein, *J.*) denied class certification, concluding that a class action was "neither the superior nor fairer method for litigating the issues in the Complaint." Gallego v. Northland Grp., Inc., 102 F. Supp. 3d 506, 510 (S.D.N.Y. 2015). The court then *sua sponte* questioned its subject-matter jurisdiction, explaining that the complaint appeared to allege nothing other than a violation of New York City law and not to raise any

6

colorable federal claims, and directed Gallego to show cause why the complaint ought not be dismissed on that basis.  Id. at 511.  In response, Gallego filed a "cross motion for reconsideration" of the April 27 order, J.A. 13–14.  Four days later, on May 19, 2015, the district court issued an order denying the motion, and dismissing the case for lack of subject-matter jurisdiction.  This appeal followed.

**DISCUSSION**

I.   Subject-Matter Jurisdiction

Federal district courts have subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The Supreme Court has recognized, however, that federal claims that are "not colorable, *i.e.* . . . 'immaterial and made solely for the purpose of obtaining jurisdiction' or . . . 'wholly insubstantial and frivolous,'" do not give rise to federal-question jurisdiction.  Arbaugh v. Y&H Corp., 546 U.S. 500, 513 n.10 (2006), quoting Bell v. Hood, 327 U.S. 678, 682–83 (1946).  The district court found that Gallego's FDCPA claims fell into that category.  We disagree.

Just weeks ago, the Supreme Court cautioned courts against collapsing the distinction "between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits."

7

*Shapiro v. McManus*, 136 S. Ct. 450, 455 (2015). The Court cited a series of formulations from prior cases illustrating the level of frivolity required for a federal claim to fail to invoke federal subject-matter jurisdiction – "'essentially fictitious,' 'wholly insubstantial,' 'obviously frivolous,' and 'obviously without merit,'" id. at 456 – and further noted that the adverbs in those formulations "were no mere throwaways; the limiting words 'wholly' and 'obviously' have cogent legal significance." Id. (alteration and some internal quotation marks omitted). Unless a claim fails to clear even that low bar, the Court explained, "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." Id. That is what the district court should have done here.

We agree with the district court that Gallego fails to state a claim under the FDCPA. The complaint can be read as asserting two alternative theories of FDCPA liability: either that the prohibitions of §§ 1692e(10) and 1692f against "false representation[s,] deceptive means" and "unfair or unconscionable means" in effect incorporate the New York City Administrative Code's provisions on debt collection agencies, or that failing to include a call-back name is itself "deceptive" or "unfair or unconscionable," under the plain meaning of those terms.

8

Neither theory has merit. As to the first, there is no indication that Congress intended for §§ 1692e(10) and 1692f to incorporate state- or local-law standards of conduct. On the contrary, the FDCPA expressly contemplates the existence of state laws that offer protections to consumers that go beyond the FDCPA itself. The section entitled "[r]elation to State laws" provides that the FDCPA preempts state laws to the extent that they are "inconsistent" with the FDCPA, and further clarifies that "a State law is not inconsistent with [the FDCPA] if the protection such law affords any consumer is greater than the protection provided by [the FDCPA]." 15 U.S.C. § 1692n. If the FDCPA itself incorporated applicable state and local law, that clarification would be unnecessary. Accordingly, we join every other Circuit Court to have considered the question in concluding that violations of state and local debt collection statutes are not per se actionable under the FDCPA. See Currier v. First Resolution Inv. Corp., 762 F.3d 529, 537 (6th Cir. 2014) (stating that "Congress did not turn every violation of state law into a violation of the FDCPA"); LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1192 (11th Cir. 2010) (holding that "the conduct or communication at issue must also violate the relevant provision of the FDCPA," and not merely a state-law provision); Beler v. Blatt, Hasenmiller,

9

Leibsker & Moore, LLC, 480 F.3d 470, 474 (7th Cir. 2007) (holding that § 1692f "does not take a state-law dispute and move it to federal court"); Carlson v. First Revenue Assurance, 359 F.3d 1015, 1018 (8th Cir. 2004) (stating that the FDCPA "was not meant to convert every violation of a state debt collection law into a federal violation"); Wade v. Reg'l Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996) (disagreeing "that debt collection practices in violation of state law are per se violations of the FDCPA").

The second theory is equally unavailing. The omission of a call-back name is neither a "false representation" nor a "deceptive means" under § 1692e(10). It does not render the collection letter "open to more than one reasonable interpretation, at least one of which is inaccurate." Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 173 (2d Cir. 2015); see also Oxford English Dictionary (2d ed. online version Dec. 2015) (defining "deceive" as "[t]o cause to believe what is false; to mislead as to a matter of fact, lead into error, impose upon, delude, 'take in'"). Instead, the omission simply withholds information that New York City law has required debt agencies to supply, but that is not necessary to enable a recipient to understand the rest of the information contained in a typical debt collection letter. Nor can the omission fairly be characterized as an "unfair or

10

unconscionable means" under § 1692f. Gallego has not even attempted to explain how the provision of a call-back name is in any way essential to the fairness of a debt collection practice, under any conception of "fairness." And because "unconscionable," in this context, means "[s]hockingly unjust or unfair," or "affronting the sense of justice, decency, or reasonableness," Unconscionable, Black's Law Dictionary (10th ed. 2014), omitting a call-back name is *a fortiori* not unconscionable either.

That said, neither theory is so obviously frivolous that it fails to raise a colorable federal question. Importantly, neither is foreclosed by Supreme Court or Second Circuit precedent. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." (internal quotation marks omitted)); Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 138–39 (2d Cir. 2002) ("Given the clear and unambiguous precedent in this Circuit . . . the district court did not err in determining that [the petitioner-appellant's] argument failed to confer jurisdiction . . . ."). Indeed, to our knowledge, the district court here was

11

the first court ever to consider Gallego's second theory. And while the first theory has met with universal disfavor in the Courts of Appeals, such adverse authority does not necessarily make a claim insubstantial, or foreclose the possibility that another court might find it meritorious. See, e.g., United States v. Rodriguez-Rios, 14 F.3d 1040 (5th Cir. 1994) (en banc) (rejecting the "exculpatory no" exception to 18 U.S.C. § 1001 after it had been adopted by eight circuits, including the Fifth Circuit itself); Brogan v. United States, 522 U.S. 398 (1998) (agreeing with Rodriguez-Rios). Innovative lawyers should not be deterred from advancing legal theories that neither we nor the Supreme Court have authoritatively rejected by the risk of having their claims branded "frivolous" simply on the basis of non-binding adverse authority.

Nor are Gallego's theories so obviously without merit as to preclude jurisdiction in the absence of relevant binding precedent. In other contexts, the Supreme Court has occasionally directed courts to look to state law "to fill the interstices of federal legislation," United States v. Kimbell Foods, Inc., 440 U.S. 715, 727–28 (1979), and the argument that a court interpreting the FDCPA – and particularly the phrase "unfair or unconscionable means," which, it has been observed, is "as vague as they come," Beler, 480 F.3d at 474 – should do the same

12

is not obviously frivolous. Nor is the argument that providing a call-back number without a call-back name could make it marginally easier for debt collection agencies to refuse to engage with callers at that number – a practice that could itself be characterized as "unfair." Thus, because Gallego's FDCPA claims meet the very low threshold required to support federal-question jurisdiction, despite their ultimate lack of merit, the district court has jurisdiction to address them on the merits.[2]

II. Class Certification

Having determined that the district court had subject-matter jurisdiction over this action, we must next address its denial of class certification, which we review for abuse of discretion. Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP, 806 F.3d 71, 86 (2d Cir. 2015). That standard of review is deferential: "the district court is empowered to make a decision – of *its* choosing – that falls within a range of permissible decisions, and we will only

[2] We emphasize, however, that we do not find jurisdiction here on the ground urged by Gallego: that several district court decisions ruled on the merits of similar claims without questioning their subject-matter jurisdiction. Even were we bound by district court decisions, which of course we are not, it is well established that *sub silentio* assumptions of jurisdiction have no precedential value on the jurisdictional question. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 119 (1984); Adeleke v. United States, 355 F.3d 144, 149–50 (2d Cir. 2004).

find 'abuse' when the district court's decision rests on an error of law or a clearly erroneous factual finding, or its decision cannot be located within the range of permissible decisions."  Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010) (ellipses and some internal quotation marks omitted).  We discern no abuse of discretion here.

Before certifying a class, a district court must assure itself that the requirements of Federal Rule of Civil Procedure 23(a) and (b) have been met.  Of most relevance here are the requirements "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3), and that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In the context of a request for settlement-only class certification, the protection of absentee class members takes on heightened importance.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1997).

In concluding that Rule 23(b)(3)'s superiority requirement was not met, the district court pointed to the "meaningless" amount – 16.5 cents, by our calculation – that each putative class member would receive from the settlement if all of the estimated 100,000 class members filed a claim.  Gallego, 102 F. Supp.

14

3d at 510.  It further explained that the cost of providing class members "the best notice that is practicable under the circumstances," as required by Rule 23(c)(2)(B), "would be disproportionate to the benefit accruing to" the class members.  Id.  In response, Gallego claims that the vast majority of class members are unlikely to file claims, estimating the probable participation rate at 5%, and that those who do file claims will thus recover a more substantial amount.  An expected low participation rate is hardly a selling point for a proposed classwide settlement – and the relief provided would still be trivial even if only 5% of class members filed a claim.  Denial of certification was within the range of permissible decisions where it appeared that the intended result of the settlement was "mass indifference, a few profiteers, and a quick fee to clever lawyers."  Id.

There was also reason for the district court to doubt that Gallego would "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4).  See id. at 511 (finding that "certifying a class would do little more than turn [Northland]'s settlement with Mr. Gallego into a general release of liability from all similarly situated plaintiffs at minimal extra cost").  The settlement agreement reached by Gallego and Northland provided that all class members

15

who did not affirmatively opt out of the settlement would release their claims against Northland, not only under the FDCPA, but also under other federal laws, "state law, New York City law (including the New York City Administrative Code), common law, territorial law, or foreign law." J.A. 64. The release applied to all "[c]laims arising out of any of the facts, events, occurrences, acts or omissions complained of in the Lawsuit, or other related matters . . . relating to letters sent to them that are substantially similar to the letter" received by Gallego. Id. The conclusion is reasonable that absentee class members' interests would not be best served by a settlement that required them to release any and all claims relating to similar letters from Northland in exchange for as little as 16.5 cents – or for no money at all, if they succumbed to the mass indifference predicted by Gallego himself.

## CONCLUSION

For the reasons stated above, we VACATE the judgment dismissing the case for lack of subject-matter jurisdiction and AFFIRM the denial of class certification. The case is REMANDED for further proceedings consistent with this opinion, including the consideration of any motion to dismiss for failure to state a claim that may be filed.

16