16-3959-cv
*Amid v. Chase, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of November, two thousand seventeen.

Present:
> PIERRE N. LEVAL,
> DEBRA ANN LIVINGSTON,
> DENNY CHIN,
> > *Circuit Judges.*

---

FARAH MALEKI AMID,

> *Plaintiff-Appellant,*

v.                                            16-3959

JOHN M. CHASE, individually and in his official capacity, HARVEY MARX, individually, HENRY FOSTER, individually and in his official capacity, MATTHEW MOED, individually and in his official capacity, VILLAGE OF OLD BROOKVILLE, INCORPORATED VILLAGE OF OLD BROOKVILLE, GLEN COVE HOSPITAL, MEDICAL DOCTORS, THOMAS R. LAMB, individually and in his official capacity, SHAUN C. MCKEE, individually and in his official capacity, JEFFREY A. DOVE,

> *Defendants-Appellees,*

OLD BROOKVILLE POLICE DEPARTMENT, POLICE OFFICERS JOHN DOES AND JANE DOES, said names

being fictitious, their true names and identities unknown, intended to describe and identify arresting police officers employed and acting on behalf of the Old Village of Brookville Police Department, JOHN DOES and JANE DOES, said names being fictitious, their true names and identities unknown, intended to describe and identify arresting police officers employed and acting on behalf of the Glen Cove Hospital,

*Defendants.*

_____

| | |
|---|---|
| For Plaintiff-Appellant: | JOHN G. BALESTRIERE, Balestriere Fariello, New York, NY. |
| For Defendants-Appellees: | MARK A. RADI, Sokoloff Stern LLP, Carle Place, NY. |
| | DANIEL S. RATNER, Heidell, Pittoni, Murphy & Bach, LLP, New York, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Wexler, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Farah Maleki Amid ("Amid") appeals from an October 28, 2016 final judgment by the United States District Court for the Eastern District of New York, disposing of her suit after a partial grant of the defendants' Rule 12(b)(6) motion to dismiss and a jury verdict in favor of the remaining defendants. Amid filed this suit against the Village of Old Brookville and Incorporated Village of Old Brookville ("the Village"), Henry Foster, Harvey Marx, John Chase, and Matthew Moed ("the Individual Village Defendants"), Glen Cove Hospital ("Glen Cove"), individual Glen Cove medical doctors ("the Individual Doctor Defendants"), and Old Brookville Police Department (OBPD) Officers Thomas Lamb ("Lamb"), then-Officer (now Sergeant) Shaun McKee ("McKee"), and Sergeant Jeffrey Dove ("Dove"). The suit alleges multiple

2

violations of federal and state law, and seeks relief under, *inter alia*, 42 U.S.C. §§ 1983 and 1985. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### A. Amid's Claims Against the Village and the Individual Village Defendants

Amid first challenges the district court's dismissal of her claims against the Village and the Individual Village Defendants on the grounds of *res judicata*. We review *de novo* a district court's application of *res judicata*. *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017). *Res judicata* is a principle that prevents parties from re-litigating issues that were raised in a prior action, as well as litigating issues that could have been raised in a prior action but were not. *See id. Res judicata* encompasses two different doctrines: "claim preclusion" and "issue preclusion." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015). The relevant doctrine here is "claim preclusion," which "precludes not only litigation of claims raised and adjudicated in a prior litigation between the parties (and their privies), but also of claims that might have been raised in the prior litigation but were not." *Id.* at 108. A suit is "claim precluded" if the following three criteria are met: (1) the previous action involved the same adverse parties (or individuals in privity with them); (2) "the claims asserted in the subsequent action were, or could have been, raised in the prior action"; and (3) "the previous action involved an adjudication on the merits." *Id.* (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014)).

Amid had previously filed a lawsuit against the Village and the Individual Village Defendants in 2011, also asserting various federal and state law claims ("the 2011 lawsuit"). On or about December 12, 2012, Amid's counsel signed a stipulation that dismissed virtually all of Amid's claims in that case "with prejudice as against all defendants." A320. The district court

3

so-ordered the stipulation on December 17, 2012, and dismissed the remainder of Amid's suit on the merits on February 7, 2013. *See Amid v. Vill. of Old Brookville*, No. CV 11-3800, 2013 WL 527772, at *7 (E.D.N.Y. Feb. 7, 2013).

Amid's 2011 lawsuit precludes her instant suit against the Village and the Individual Village Defendants. First, the Village and the Individual Village Defendants were also defendants in Amid's 2011 lawsuit. Second, the conduct underlying Amid's instant claims against the Village and Individual Village Defendants—*i.e.*, an alleged pattern or practice of harassment, malicious attempts to hinder her efforts to obtain Village approval for renovations to her property, and the Village's 2009 order concerning the trees on her property—all took place before she filed suit in 2011. Thus, Amid had a "full and fair opportunity" to litigate her inverse condemnation, takings, due process, and *Monell* claims against the Village and the Individual Village Defendants in 2011, but chose not to seek that opportunity. *NML Capital, Ltd. v. Banco Cent. de la Republica Argentina*, 652 F.3d 172, 184 (2d Cir. 2011) (quoting *Manhattan Eye Ear & Throat Hosp. v. N.L.R.B.*, 942 F.2d 151, 156 (2d Cir. 1991)).[1] Finally, Amid's 2011 lawsuit involved an adjudication on the merits. As to the claims in that lawsuit governed by the stipulation signed by Amid's counsel, the stipulation—which dismissed those claims "with prejudice"—has the preclusive effect of a final judgment. *See Nemaizer v. Baker,* 793 F.2d 58, 60 (2d Cir. 1986). And to the extent that the lawsuit involved claims *not* governed by the stipulation, the district court considered those claims and dismissed them on the merits. *See Amid*, 2013 WL 527772, at *4–7.

---

[1] Amid's complaint also alleges that the Village negligently retained and supervised the OBPD officers who restrained her and transported her to Glen Cove on May 27, 2012. Amid does not press her negligent retention and supervision claim in her brief on appeal, however, and we therefore deem this claim abandoned. *See Cruz v. Gomez*, 202 F.3d 593, 596 n.3 (2d Cir. 2000).

Amid raises two arguments for why her claims against the Village and the Individual Village Defendants are not precluded, neither of which is persuasive. First, Amid argues that her counsel filed the stipulation of dismissal in the 2011 lawsuit without her knowledge or consent. It is true that an attorney lacks authority to settle or dismiss a client's case without the client's consent. *See Gomez v. City of New York*, 805 F.3d 419, 424 (2d Cir. 2015) (per curiam). However, even assuming *arguendo* that Amid's attorney filed the stipulation without authority, a stipulation to dismiss "with prejudice" retains its preclusive effect until it is vacated pursuant to a motion under Federal Rule of Civil Procedure 60(b) or otherwise. *See Gomez*, 805 F.3d at 423; *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 626 (2d Cir. 2007); *Nemaizer*, 793 F.2d at 60–61. Amid never moved to vacate her attorney's stipulation. Furthermore, even if she were to move to vacate the stipulation under Rule 60(b), her motion would be time-barred. Relief from counsel error is generally afforded pursuant to Rule 60(b)(1), *Nemaizer*, 793 F.2d at 62, and a Rule 60(b)(1) motion must be made "no more than a year after the entry of the judgment," Fed R. Civ. P. 60(c)(1). The district court so-ordered the stipulation nearly five years ago, and almost a year-and-a-half before Amid filed the instant lawsuit. Thus, even assuming *arguendo* that Amid's attorney lacked authority to sign the stipulation, the stipulation retains its preclusive effect for purposes of this lawsuit.

Second, Amid argues that claims against the Village and the Individual Village Defendants are not precluded, because they are based on facts that arose subsequent to her 2011 lawsuit: an April 2014 application for a certificate of occupancy and an incident with the police on May 27, 2012. Although it is true that each of these events occurred after the 2011 lawsuit, that alone does not rebut preclusion. A suit can be claim precluded even if it is based in part on facts that occurred after the initial suit. *See Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110–13 (2d Cir. 2000). For

purposes of claim preclusion, the key question is whether "the facts *essential* to the second [suit] were [already] present" at the time of the first suit. *Id.* at 110–11 (citation and internal quotation marks omitted) (emphasis removed).

Here, the facts essential to Amid's claims occurred prior to the 2011 lawsuit. In February 2009, the Village imposed a condition on the approval of her site plan that no certificate of occupancy would be issued until all improvements were complete, including the replacement of trees that Amid had removed without village approval. Amid challenged this order in her 2011 lawsuit, which was dismissed on numerous grounds including untimeliness and failure to show unconstitutional conduct.

The present action relies in part on the fact that in 2014, after the first action, she again requested a certificate of occupancy seeking to be relieved of the onerous condition previously imposed. A332. But her application did not show any materially changed circumstances. She was merely seeking, upon resubmission, to be freed from the original condition. The Village's adherence to its previous position on essentially unchanged facts could not resuscitate an untimely suit. Nor could it convert conduct previously determined not to have been in violation of the Constitution into unconstitutional conduct. The facts essential to her claim remained the same.[2]

Nor does the May 27, 2012 incident with the police amount to a new fact essential to Amid's claims against the Village. Amid's *Monell* claim against the Village alleges "an official policy, practice, and custom" of malicious harassment through the acts of the Individual Village Defendants and OBPD officers. A117 ¶ 174. Amid does not argue that the single incident of May 27, 2012 sufficed to constitute a "pattern or practice" under *Monell*, nor that she was

---

[2] We do not address whether Amid could bring a new claim based on subsequent denials of her application for a certificate of occupancy if they are wrongful and based on materially changed circumstances.

somehow unaware of the Village's "pattern or practice" of harassment until this incident. Rather, her complaint frames the May 27, 2012 incident as an *indication* of a "pattern or practice" of misconduct—and virtually all of the misconduct comprising this "pattern or practice" took place before she filed suit in 2011. As a result, the "essential" facts of Amid's *Monell* claim existed at the time of her original suit. Her claims against the Village and the Individual Village Defendants are therefore precluded.[3]

### B. Amid's § 1983 Suit Against Glen Cove

Amid also challenges the district court's conclusion that Glen Cove was not a "state actor" for purposes of § 1983 when it detained her on May 27, 2012 pursuant to Article 9 of the New York Mental Hygiene Law ("M.H.L."). We review *de novo* a district court's dismissal of a complaint for failure to state a claim. *Pruter v. Local 210's Pension Tr. Fund*, 858 F.3d 753, 759 (2d Cir. 2017). "To state a claim under § 1983, a plaintiff must allege that defendants violated plaintiff's federal rights while acting under color of state law." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014). A plaintiff can demonstrate that a private hospital such as Glen Cove "act[ed] under color of state law" in one of three ways: (1) by demonstrating that "the State compelled the [hospital's] conduct" (the "compulsion test"); (2) by demonstrating that "there is a sufficiently close nexus between the State and the [hospital's] conduct" (the "close nexus test"); or (3) by demonstrating that "the [hospital's] conduct consisted of activity that has traditionally been the exclusive prerogative of the State" (the " public function test"). *Id.* (quoting *Hogan v. A.O. Fox Memorial Hosp.*, 346 Fed. App'x. 627, 629 (2d Cir. 2009)). Importantly, our case law forecloses the possibility that a hospital is a "state actor" merely because it confines patients pursuant to the M.H.L. *See id.*; *Doe v. Rosenberg*, 166 F.3d 507, 507 (2d Cir. 1999) (per curiam); *see also*

---

[3] Because we find that Amid's suit against the Village and Individual Village Defendants is claim precluded, we need not determine if Amid's claims against these defendants also fail on the merits.

*Andersen v. N. Shore Long Island Jewish Health Sys.'s Zucker Hillside Hosp.*, 632 Fed. App'x 13, 14 (2d Cir. 2016) ("[T]he forcible medication and hospitalization of a plaintiff by private health care providers cannot fairly be attributed to the state for purposes of § 1983." (citation and internal quotation marks and brackets omitted)). The rationale for this rule, as we explained in *McGugan*, is that a hospital does not, by virtue of confining patients pursuant to the M.H.L., satisfy any of the three tests for "state action" under § 1983. *McGugan*, 752 F.3d at 229–30.

Here, Amid alleges exactly the sort of claim that *McGugan* bars: a § 1983 claim against a private hospital for detaining her pursuant to the M.H.L. Amid does not argue that *McGugan* was wrongly decided, and despite the fact that Amid's adversaries rely heavily on *McGugan*, Amid does not cite *McGugan* in her briefing. Amid's sole argument to support the allegedly "close nexus" between the State and Glen Cove is that the Glen Cove staff detained her only because the OBPD officers instructed them to do so. Even if we were to accept this allegation as "plausible," *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the allegation appears nowhere in Amid's complaint. The complaint merely insists that "[u]pon information and belief, Glen Cove Hospital and its personnel *in the past* have been unjustifiably compliant" with OPBD officers' demands, and *in the past* have "detain[ed] an individual for days with no probable cause, only because police officers ask them to." A98 ¶ 57 (emphasis added). Thus, Amid's complaint "does not allege that the state actors requested, much less compelled [Glen Cove] or its staff to involuntarily hospitalize her. Nor can we discern any other reason why the conduct of private actors should become attributable to the state merely because it follows in time the conduct of state actors." *McGugan*, 752 F.3d at 230. In short, *McGugan* directly forecloses Amid's attempt to argue that Glen Cove was a "state actor" for purposes of § 1983, and the district court correctly dismissed this claim.

## C. *Amid's Negligence Claim Against Glen Cove*

Amid also challenges the district court's determination that her negligence claim against Glen Cove was time-barred. We review a district court's application of a statute of limitations *de novo*. *City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). In New York, "it is the gravamen or essence of the cause of action that determines the applicable Statute of Limitations." *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 293 (N.Y. 1977). Thus, "[w]hen applying a statute of limitations, [New York] courts look at the essence of the stated claim and not the label by which a plaintiff chooses to identify it." *Dolmetta v. Uintah Nat. Corp.*, 712 F.2d 15, 19 (2d Cir. 1983). In New York, a "false imprisonment" claim consists of the following four elements: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016). Amid alleges that her claim against Glen Cove for "improperly involuntarily committing her and holding her for three days" was really a negligence claim subject to a three-year statute of limitations rather than a false imprisonment claim subject to a one-year statute of limitations. Br. for Pl.-Appellant at 57. Amid, however, refers to the actions by Glen Cove as "false imprisonment" in the second amended complaint. A96. Although she alludes to "negligence," she does not allege a true negligence claim, such as that the Glen Cove staff committed medical malpractice. Rather, the gravamen of the complaint is that Glen Cove intentionally kept her against her will in violation of the M.H.L. A115 ¶ 164; *see also* A97 ¶¶ 53–55 (Glen Cove "illegally detained [plaintiff] against her will," "did not have any authority under law to detain," and "attempt[ed] to justify its improper and unlawful commitment."). In other words, Amid alleges that: (1) Glen Cove intentionally confined her; (2) she was conscious of the confinement;

9

(3) she did not consent to the confinement; and (4) the M.H.L. did not authorize her confinement. Consequently, the "essence" of the claim is false imprisonment, and therefore the district court did not err in applying the statute of limitations for false imprisonment. *See Dolmetta*, 712 F.2d at 19.

As stated above, the statute of limitations for actions to recover damages for false imprisonment in New York is one year. *See* N.Y. C.P.L.R. § 215(3). Amid filed suit against Glen Cove on May 20, 2014, nearly two full years after the incident on May 27, 2012. Because Amid filed suit outside the relevant statute of limitations, we affirm the district court's dismissal of Amid's negligence claim as time-barred.

### D. Amid's Objections to McKee's Testimony

Finally, we affirm the trial court's decision to allow McKee to testify at trial about his understanding of the M.H.L. and his prior experiences with potentially suicidal individuals. We review a district court's evidentiary rulings for abuse of discretion. *See Sheng v. M&TBank Corp.*, 848 F.3d 78, 84 (2d Cir. 2017). This is a "deferential" standard. *Gallego v. Northland Grp. Inc.*, 814 F.3d 123, 129 (2d Cir. 2016). Under this standard of review, we may reverse only if the district court "based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Sheng*, 848 F.3d at 84 (citation and internal quotation marks omitted). The district court's error must have been "*manifest[ly]*" erroneous, since district courts have "wide latitude . . . in determining whether evidence is admissible, and in controlling the mode and order of its presentation to promote the effective ascertainment of the truth." *Cameron v. City of New York*, 598 F.3d 50, 61 (2d Cir. 2010) (citation and internal quotation marks omitted) (emphasis added). Amid argues that McKee's testimony was irrelevant, *see* Fed. R. Evid. 401, unduly prejudicial,

10

*see* Fed. R. Evid. 403, and improper lay opinion testimony, *see* Fed. R. Evid. 701, and the judge's decision to admit the testimony constituted reversible error. In turn, the defendants argue that Amid failed to preserve these objections, and that, in the alternative, the judge did not abuse his discretion in admitting this testimony.

We need not determine if Amid preserved her objections, because even assuming *arguendo* that she did preserve them, the trial judge did not abuse his discretion in admitting McKee's testimony. First, McKee's testimony was relevant under Rule 401. Amid sought to collect punitive damages from McKee. In a § 1983 suit, a jury may award punitive damages if "the defendant's conduct is shown to be motivated by evil motive or intent," or if the defendant's conduct "involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The "reckless or callous indifference" standard, "at a minimum, require[s] recklessness in its subjective form"—that is, a "subjective consciousness of a risk of injury or illegality[,] and a criminal indifference to civil obligations." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) (citation and internal quotation marks omitted). In accordance with this case law, the district court judge properly charged the jury as follows:

> In addition to actual damages, the law allows but does not require the jury to award punitive damages. The purpose of punitive damages is to punish a wrongdoing [*sic*] for extraordinary misconduct. If you find in favor of plaintiff and against defendants and if [you] find the conduct of defendants was recklessly[,] callously, indifferent to plaintiff's constitutional rights, then in addition to any other damages to which you find plaintiff entitled you may but are not required to award plaintiff an additional amount of punitive damages if you find it is appropriate to punish defendants or deter defendants and others from like conduct in the future. Whether to award plaintiff punitive damages and the amount of those damages are within your sound discretion.

A869. Thus, the question of McKee's subjective intent in responding to Amid's suicide threat and entering Amid's house was certainly "relevant." McKee's testimony had a tendency to

11

establish that McKee thought he was acting within the law rather than without it. It also provided insight into why he chose to exercise his discretion under the M.H.L. to transport Amid to a hospital—namely, because he believed threats of suicide needed to be taken seriously. The testimony therefore made it less probable that McKee acted with the requisite malicious intent or "reckless or callous indifference" necessary for a finding of punitive damages, and was therefore "relevant" for purposes of Rule 401.

Second, the district court did not err in its Rule 403 determination that the probative value of McKee's testimony outweighed the danger of unfair prejudice. "Under Rule 403, so long as the district court has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006). Here, the trial judge weighed the testimony's likelihood of unfair prejudice against the remarkably high probative value of the evidence for undermining Amid's case for punitive damages. The district court judge did not act "arbitrar[il]y" or "irrational[ly]" in balancing the equities as he did. *Id.*

Finally, McKee's testimony was not improper lay opinion testimony under Rule 701. Lay opinion testimony is proper if: (1) the testimony is "rationally based on the witness's perception"; (2) the testimony is "helpful to clearly . . . determining a fact in issue"; and (3) the testimony is "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Here, McKee was not testifying as to the actual content of the M.H.L., but rather his own *subjective understanding* of the M.H.L. This testimony was offered to establish that McKee believed he was acting in accordance with the M.H.L.—which, as stated above, was relevant to the punitive damages issue. Furthermore, McKee's testimony concerning the M.H.L. was less an "opinion" than a direct parroting of the M.H.L.'s language, let alone an "opinion" based on specialized

12

knowledge or expertise. *Compare* M.H.L. § 9.41 (allowing a state police officer to "take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others"), *with* A815 ("Under the [M.H.L.], you take somebody into custody if they show a serious threat towards themselves or another, possibly harming themselves or another."). In these circumstances, we do not believe it was "manifest error" for the district court to conclude that McKee's testimony was proper under Rule 701. *See Cameron*, 598 F.3d at 61. Thus, even assuming *arguendo* that Amid preserved her objections for appeal, we conclude they do not constitute a basis for us to order a new trial.

*       *       *

We have considered Amid's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.[4]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[4] Because we are affirming the district court's dismissal of all claims against the Village, the Individual Village Defendants, and Glen Cove, and declining to reverse the jury's verdict in favor of the OBPD officers, we need not determine whether the district court lacked personal jurisdiction over the Village and the Individual Village Defendants, the OBPD officers are entitled to qualified immunity, or the district court should have granted the OBPD officers' motion for summary judgment. *See* Br. for Def.-Appellees at 49–63.

13