# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-1932

_____

Daniel Haney

*Plaintiff - Appellant*

v.

Portfolio Recovery Associates, L.L.C.; Gamache & Myers, P.C.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 14, 2016
Filed: September 21, 2016
[Published]

_____

Before WOLLMAN, MELLOY, and COLLOTON, Circuit Judges.

_____


PER CURIAM.

Daniel Haney asserted claims against a debt collector, Portfolio Recovery Associates, L.L.C. ("PRA"), and its attorneys, Gamache & Myers, P.C. ("Gamache"), under the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"). The defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P.

12(c), and the district court granted the motion. We affirm in part, reverse in part, and remand.

## I.

Haney incurred credit-card debts using a Wal-Mart credit card issued by GE Money Bank, F.S.B. (the "Wal-Mart account"), and an HSBC credit card issued by HSBC Bank Nevada, N.A./Orchard Bank (the "HSBC account"). The card issuers charged off the debts and later sold and assigned the charged-off debts to PRA. PRA hired Gamache to aid in collection of the HSBC account. Gamache sent Haney three collection letters and filed a state-court collection action. PRA employed other counsel to aid in collection of the Wal-Mart account and filed a state-court collection action.

Haney alleges FDCPA violations based upon statements, omissions, and demands in the underlying letters and collection actions. The primary issues raised in this appeal include: (1) whether the original creditors' acts of charging off the debts preclude the assignee debt collector from demanding post-charge-off statutory prejudgment interest in letters and collection suits; and (2) whether the demands sought prejudgment interest upon interest (compound interest) in violation of Missouri law and the FDCPA.

With these arguments in mind, we turn to the detailed allegations. The balance of the Wal-Mart account was $1,224.88 at the time of the July 20, 2010 charge-off. Of that total amount, $416.93 was labeled "FINANCE CHARGES" and consisted, at least in part, of accrued contractual interest. The HSBC account, purportedly charged off on June 30, 2010, had a balance of $740.16. A June 2010 statement shows the outstanding HSBC balance included at least some fee and interest charges. PRA received the Wal-Mart account by assignment on April 19, 2011. Haney does

-2-

not allege the date of assignment for the HSBC account, and the pleadings and appended materials do not identify an assignment date.[1]

Gamache sent Haney a first letter regarding the HSBC account dated April 11, 2013. The letter stated, "RE: PORTFOLIO RECOVERY ASSOCIATES, LLC DANIEL G HANEY," identified the debt as "OUR FILE NO.: 13504068," and stated the amount due was "$925.59 . . . plus interest that may accrue after the date of this letter." The letter stated Gamache would provide the name and address of the original creditor if Haney requested the creditor's identity within thirty days of receiving the letter. The letter also stated Gamache would assume the debt to be valid unless Haney responded within thirty days but would obtain verification of the debt if Haney provided notice in writing to dispute any portion of the debt. The file number listed in the letter bore no relationship to Haney's HSBC account number. The letter made no reference to HSBC or the $740.16 HSBC account balance at the time of charge-off and provided no explanation as to how the demanded amount of $925.59 was determined.

In fact, Haney argues the amount demanded approximated the $740.16 charge-off balance plus nine percent statutory prejudgment interest from the June 20, 2010 charge-off to the date of the letter. The amount demanded was significantly below an amount that would have resulted from the continued accrual of contractual interest. The letter's demand for interest covered a period of time before and after PRA acquired the debt and sought statutory prejudgment interest on the entire charge-off balance, an amount that included original principal, fees, and contractual interest.

---

[1]Haney attached the collection letters, state-court complaints, and some additional materials to his federal complaint. We treat these materials as part of the pleadings. Stahl v. City of St. Louis, 687 F.3d 1038, 1039–40 (8th Cir. 2012). These attached materials, however, do not clarify exact dates for all events. Haney nevertheless treats certain facts as established for the purpose of his arguments on appeal.

In the second letter, dated May 16, 2013, Gamache identified the debt with the same account number, this time stating, "there appears to be an unpaid balance of $931.98," but Gamache's client would settle for "745.58, provided this amount is paid within 10 days from the date of this letter." The third letter, dated May 31, 2013, listed the same account number and stated, "CLAIM AMOUNT AS OF THE DATE OF THIS LETTER IS: $934.72 PLUS INTEREST THAT MAY ACCRUE AFTER THE DATE OF THIS LETTER." Unlike the first two letters, which made no references to remedies or legal actions, the third letter concluded, "If we do not hear from you in five days, we will feel free to proceed with all available remedies without further notice to you."

Haney took no action in response to the letters and sought no clarification regarding the identity of the original creditor. Gamache filed a Missouri state-court complaint on November 7, 2013, naming PRA as the plaintiff, identifying Gamache as counsel for PRA, and identifying HSBC as the original creditor. The complaint's prayer for relief, styled as a concluding "whereas" paragraph, sought "a sum of $740.16 [the original charged-off amount] plus post judgment interest at the statutory rate and for all costs expended herein and for any other and further relief this Court deems just and proper." The state-court complaint on the HSBC account included no request for pre-judgment interest.

Regarding the Wal-Mart account, PRA sent no letters. Rather, PRA filed a Missouri state-court complaint on April 22, 2013. The complaint's prayer for relief, styled as a concluding "whereas" paragraph, sought "a sum of $1,224.88 [the charged-off amount], together with prejudgment interest, as allowed by law, at the statutory rate from and after July 20, 2010, plus interest on any judgment rendered by this court at the rate of 9% per annum, all costs expended herein and for such further and other relief as this court deems just and proper." This demand for statutory prejudgment interest covered post-charge-off periods of time before and after PRA's

-4-

acquisition of the debt and also sought statutory prejudgment interest on the accrued contractual interest reflected in the $1,224.88 charge-off balance.

Haney then filed the current complaint alleging FDCPA violations in four counts. Count I alleged PRA violated 15 U.S.C. § 1692e in several respects by "misrepresent[ing] the character or amount of the debt" being sought. First, Count I alleged PRA's suit on the Wal-Mart account misrepresented as principal a sum that also included interest. Count I also alleged PRA misrepresented the amount it sought by demanding prejudgment interest on a sum that already included contractual interest.[2] Regarding the HSBC account, Count I alleged PRA misrepresented the amount it sought by mischaracterizing as principal an amount that included interest. Finally, Count I alleged PRA violated § 1692e by "alleging, without providing proof of, a valid assignment from HSBC of the HSBC card debt[.]"

Count II alleged Gamache violated 15 U.S.C. § 1692e in two respects by "misrepresent[ing] the character or amount of the debt" it sought. First, Count II alleged Gamache's letters failed to identify which debts were being pursued, "making it impossible to ascertain which debt Gamache was attempting to collect, and making it impossible to ascertain the validity of . . . the . . . debts[.]" Second, Count II alleged Gamache's letters "unlawfully attempt[ed] to collect interest-on-interest or . . . interest inconsistent with the amount of the original charged-off debt regardless of whether the letters were attempting to collect the HSBC . . . or the [Wal-Mart account] . . . debt[.]"[3]

_____

[2]Haney also alleged, in Count I and in other Counts, that the defendants' demands for postjudgment interest were made in violation of the FDCPA. These arguments are wholly frivolous and we do not address them further.

[3]Count IV restated the same allegations of Count II against Gamache, characterizing them as violations of § 1692f(1) rather than § 1692e. The district court dismissed Count IV as derivative of Count II. Like the district court, we do not address Count IV separately.

Count III alleged PRA violated 15 U.S.C. § 1692f(1) in two respects by "us[ing] unfair or unconscionable means to attempt to collect the [HSBC] debt[.]" First, Count III alleged PRA sought "interest, fees, and other amounts not permitted at law or expressly permitted by the written instrument creating the debt." Second, Count III alleged PRA sought interest on interest "when such compound interest was not expressly permitted by the written instrument."

The defendants moved jointly for dismissal pursuant to Fed. R. Civ. P. 12(c). Haney resisted, and the district court granted the motion. The court first determined that the prayers for relief in the concluding paragraphs of a civil complaint were not communications to the debtor or actionable collection efforts pursuant to the FDCPA. Rather, the court characterized them as mere requests to the court. In the alternative, the court held the original creditor's act of charging off the card balance did not preclude a subsequent assignee from seeking statutory interest dating from the time of charge-off.

The court then determined PRA had referenced only the "balance due" or the "outstanding sum" and had not made any actionable or potentially misleading statements regarding the relative breakdown of principal and interest in the amounts demanded. And, regarding the filing of the HSBC suit without proof of a valid assignment, the district court determined there existed no requirement for the presentation of such proof at the time a collection action is filed.[4]

---

[4]Haney argues on appeal that he actually alleged PRA was not, in fact, the assignee of the HSBC account. In his complaint and district court briefing, however, he did not challenge HSBC's status as assignee. Rather, he consistently argued that PRA impermissibly filed suit "alleging, without providing proof of, a valid assignment." We view these issues as separate. The district court addressed the issue presented and found no plausible FDCPA claim based on the failure to submit proof of assignment with a state court complaint. Because Haney did not challenge PRA's status as assignee below, we do not address that issue on appeal. Because Haney

-6-

The district court determined Gamache had not violated § 1692e by failing to adequately identify the debt and Gamache and PRA had not impermissibly demanded prejudgment interest-on-interest or compound interest, in violation of state law. Haney appeals.

## II.

### A.  Standard of Review, FDCPA Generally

"We review a motion for judgment on the pleadings de novo.  We accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party." United States v. Any & All Radio Station Transmission Equip., 207 F.3d 458, 462 (8th Cir. 2000). "[W]e review [a] 12(c) motion under the standard that governs 12(b)(6) motions." Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  Pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id.  (quoting Twombly, 550 U.S. at 555).  We assess plausibility by "draw[ing] on [our own] judicial experience and common sense." Id. at 679.  Further, we "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010).

does not otherwise challenge this aspect of the district court's ruling, we do not address this issue further.

"The FDCPA was passed 'to eliminate abusive debt collection practices.'" Janson v. Katharyn B. Davis, LLC, 806 F.3d 435, 437 (8th Cir. 2015) (quoting Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 577 (2010)). It broadly "prohibits a debt collector from making a 'false, deceptive or misleading representation or means in connection with the collection of any debt,'" id. (quoting 15 U.S.C. § 1692e), and "from using 'unfair or unconscionable means to collect or attempt to collect any debt,'" id. (quoting 15 U.S.C. § 1692f). "When evaluating whether a communication is false, deceptive, or misleading, we consider the perspective of an 'unsophisticated consumer.'" Id. (quoting Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002)). This standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder.'" Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004) (quoting Duffy v. Landberg, 215 F.3d 871, 874 (8th Cir. 2000)). "Th[e] standard protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters." Id. at 317–18; see also Peters, 277 F.3d at 1055 (noting that the unsophisticated-consumer test "'prevents liability for bizarre or idiosyncratic interpretations of collection notices'" (quoting Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000))). We do not apply the unsophisticated-consumer standard to communications sent to a consumer's attorney. Powers v. Credit Management Services, Inc., 775 F.3d 567, 573–74 (8th Cir. 2015).

In addition to these general prohibitions, the FDCPA sets forth several specific examples of prohibited actions. For example, § 1692e(2) prohibits any "false representation of . . . the character, amount, or legal status of any debt[.]" Section 1692e(5) prohibits threats "to take any action that cannot legally be taken or that is not intended to be taken." Section 1692f(1) prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or

permitted by law." And, § 1692g(a) imposes on debt collectors a duty to include certain content[5] in an initial communication with a debtor (or in a follow-up writing sent within five days). With these general requirements in mind, we turn to the parties' arguments.

## B. Post-Charge-Off Statutory Prejudgment Interest

The parties agree that when an original creditor charges off a debt, additional contractual interest no longer accrues. Haney asserts a theory of implicit waiver to argue that the original creditor's choice to charge-off a debt and cease collection of contractual interest also serves as a binding waiver of any future ability to collect *statutory* interest. To support this theory, Haney details the purported accounting consequences of a charge-off and cites the legal effect of a charge-off on a creditor's

---

[5]The specific content includes:

(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

-9-

ongoing obligation to provide periodic statements. See 12 C.F.R. § 226.5(b)(2)(i) ("Regulation Z").[6] Haney appears to argue that, because the act of charging off a debt is not merely a unilateral act but an act that alters the parties' relationship and requires the original creditor to make representations to taxing authorities, we should view a charge-off as a complete waiver of any right to all forms of interest.

The defendants argue the act of charging off a debt does not preclude the collection of statutory prejudgment interest because the act of charging off a debt does not eliminate either the original creditor's statutory rights or the debtor's ongoing obligation to pay the charge-off balance—a liquidated sum—to the creditor. The defendants acknowledge the unilateral act carries with it several legal consequences as provided pursuant to federal tax law[7] and Regulation Z. They argue,

_____

[6]Regulation Z provides:

Statement required. The creditor shall mail or deliver a periodic statement as required by § 226.7 for each billing cycle at the end of which an account has a debit or credit balance of more than $1 or on which a finance charge has been imposed. *A periodic statement need not be sent for an account if the creditor deems it uncollectible*, if delinquency collection proceedings have been instituted, *if the creditor has charged off the account in accordance with loan-loss provisions and will not charge any additional fees or interest on the account*, or if furnishing the statement would violate federal law.

12 C.F.R. § 226.5(b)(2)(i) (emphasis added)

[7]See, e.g., McDonald v. Asset Acceptance LLC, No. 2:11–cv–13080, 296 F.R.D. 513, 525 (E.D. Mich. Aug. 7, 2013) ("Instead of amassing interest on a worthless account, [the creditors] sought to sell the accounts and shift the risk of nonpayment to a third party for a nominal fee. This practice also permitted [the creditors] to remove the account from the financial records and receive a bad debt tax deduction." (citing I.R.C. § 166(a)(2))); see also 26 C.F.R. § 1.166–3(a)(2)(i) ("[T]he amount which has become worthless shall be allowed as a deduction under section

-10-

however, that the unilateral act does not vest in the debtor a right to have the original creditor and its assignees otherwise forbear from exercising statutory rights to prejudgment interest.

Here, there is no suggestion the original creditors expressly waived any right to statutory prejudgment interest. Similarly, there is no suggestion they asserted an entitlement to statutory prejudgment interest. A failure to assert an entitlement to such interest, however, is not in and of itself proof of waiver. Medicare Glaser Corp. v. Guardian Photo, Inc., 936 F.2d 1016, 1021 (8th Cir. 1991) (applying Missouri law and holding, "[f]orbearance . . . does not constitute a waiver"). Rather, pursuant to Missouri law, implicit waivers must be "unequivocal[ly] clear." Id. ("If a waiver is implied from conduct, the conduct must be 'so consistent with and indicative of an intention to relinquish [the] particular right . . . and so clear and unequivocal that no other reasonable explanation of [the] conduct is possible.'" (citation omitted)). In the absence of some express statement or unequivocally clear overt act, we do not presume waiver.

Although we have never addressed the effect of a debt charge-off upon the availability of statutory prejudgment interest, several other courts have, including several district courts applying Missouri law. Based on the analyses from these several courts, we conclude Missouri statutory prejudgment interest remains available following the charge-off of a credit-card debt.

Haney relies primarily upon a case involving Kentucky law in which the Sixth Circuit held the act of charging off a debt precluded future accrual or collection of statutory prejudgment interest as well as contractual interest. Stratton v. Portfolio

166(a)(2) but only to the extent charged off during the taxable year."). Upon sale of a completely charged-off account, the creditor's basis likely will have been adjusted to zero, and the entire proceeds of the sale must recognized as income.

-11-

Recovery Assocs., LLC, 770 F.3d 443, 445 (6th Cir. 2014) ("Under Kentucky law, a party has no right to statutory interest if it has waived the right to collect contractual interest. And any attempt to collect statutory interest when it is 'not permitted by law' violates the FDCPA."). In reaching its decision, the Sixth Circuit examined Kentucky's usury statute, which allows a default rate of interest of eight percent but permits parties to contract for a different rate. Id. The court, deciding an issue of first impression under Kentucky law, concluded that the statutory rate of interest falls away entirely at the time the parties contract for a different rate. Id. at 447. As such, if one of the contracting parties later waives its right to contractual interest, there exists a void of authority to support an award of prejudgment interest rather than a default statutory rate. Id. ("Kentucky's usury statute states a default rule—it applies until displaced by a contract . . . . A party's right to collect statutory interest is extinguished, superseded by her right to collect an interest rate she has specified by contract.").

In a detailed dissent, one judge rejected this reasoning, citing district court cases from Missouri and Washington for the proposition that a default statutory rate need not be viewed as falling away when parties contract for a higher rate. See id. at 453 (Batchelder, J., dissenting) (citing Peters v. Fin. Recovery Servs., Inc., 46 F. Supp. 3d 915, 917 (W.D. Mo. Sept. 18, 2014); Grochowski v. Daniel N. Gordon, P.C., No. C13-343 TSZ, 2014 WL 1516586, at *3 n.2 (W.D. Wash. Apr. 17, 2014)). The dissent advocated treating the default rate as a floor that remains in place as a matter of statutory rights separate from contractual rights when parties contract for a higher rate. Id. The dissent concluded in the alternative that, even if the majority's interpretation of Kentucky law were correct, any error at law by the debt collector in this regard was reasonable and not actionable pursuant to the FDCPA. Id. at 453–54 ("To impose liability on [the debt collector] under the FDCPA for its reasonable resolution of a state-law question that federal and state courts have not only yet to resolve, but have never even addressed, extends the reach of the FDCPA too far.").

-12-

In the present case, the district court relied upon the lower court ruling from the Eastern District of Kentucky that the Sixth Circuit reversed in <u>Stratton</u>. <u>See Stratton v. Portfolio Recovery Assoc.</u>, No.5:12-147-DCR, 2013 WL 6191804 (E.D. Ky. Nov. 26, 2013). Haney notes this fact to argue that the Sixth Circuit's opinion in <u>Stratton</u> undercuts the lower court ruling in the present case and requires that we reverse. We disagree for several reasons.

First, the relevant Missouri statute at issue in the present case is materially distinguishable from the Kentucky statute at issue in <u>Stratton</u>. Missouri's statute provides:

> Creditors shall be allowed to receive interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; for money recovered for the use of another, and retained without the owner's knowledge of the receipt, and for all other money due or to become due for the forbearance of payment whereof an express promise to pay interest has been made.

Mo. Rev. Stat. § 408.020. The Missouri statute merely states the statutory rate of nine percent is available "when no other rate is agreed upon." <u>Id.</u> It does not state the nine percent rate otherwise becomes unavailable if a party contracts for a higher rate but subsequently waives that higher rate. Although it may be reasonable to conclude such interest falls away and becomes unavailable if parties contract for a higher rate, such a reading is by no means compelled.

In contrast, the relevant Kentucky statute examined in <u>Stratton</u>, 770 F.3d at 447, speaks in strict terms regarding the unavailability of statutory interest when parties contract for a higher rate:

> The legal rate of interest is eight percent (8%) per annum, but any party or parties may agree, in writing, for the payment of interest in excess of that rate[;] . . . and *any such party* or parties, and any party or parties who may assume or guarantee any such contract or obligation, *shall be bound for such rate of interest as is expressed in any such contract,* obligation, assumption, or guaranty, *and no law of this state prescribing or limiting interest rates shall apply to any such agreement or to any charges which pertain thereto or in connection therewith. . . .*

Stratton, 770 F.3d at 447 (quoting Ky. Rev. Stat. § 360.010(1)) (alterations in original) (emphasis added). In fact, the majority in Stratton noted this distinction in a footnote addressing the dissent's reliance on cases interpreting Missouri and Washington law. Id. at 448 n.1 ("As a result, courts construing such statutes may determine that the particular state regime does not treat creditors so strictly after they waive a contractual rate of interest. Such differences among statutes reinforce the need to read Kentucky's statute carefully and apply its particular language." (citing Peters v. Northland Grp., No. 14–0488–CV, 2014 WL 4854658 (W.D. Mo. Sept. 30, 2014); Grochowski v. Daniel N. Gordon, P.C., No. C13–343, 2014 WL 1516586 (W.D. Wash. Apr. 17, 2014))); see also Bunce v. Portfolio Recovery Assoc., LLC, No. 14-2149, 2014 WL 5849252, at *4 (D. Kan. Nov. 12, 2014) ("The Sixth Circuit's decision in Stratton turned on a unique feature of the Kentucky interest statute[.]"). We find the absence of such language in the Missouri statute a compelling reason to depart from the majority's holding in Stratton.

Second, when we examine the federal statutory rights or privileges gained or lost due to charging off a debt, *supra* n. 6–7*,* we find nothing inconsistent with the creditor or its assignee seeking statutory prejudgment interest after the amount owed is reduced to a liquidated sum through charge-off. The tax benefit of a debt charge-off—current realization of expense deduction or capital loss—is a matter of concern as between the creditor and the relevant taxing authority. Haney appears to assert that any attempt to collect statutory interest is inconsistent with the accounting treatment

-14-

of a debt at charge-off. Even if Haney is correct that seeking statutory interest would be contrary to prior tax treatment, the consequences of such an act are a matter of concern as between the creditor and the taxing authority rather than between the creditor and the debtor. A creditor's potential liability for penalties or additional taxes does nothing to change the liquidated sum the debtor owes the creditor at the time of charge-off, and it is highly unlikely a debtor would know of any communications between a creditor and a taxing authority or any ongoing changes or adjustments to a creditor's treatment of a reported item. See, e.g., AmBase Corp. v. United States, 731 F.3d 109, 121–22 (2d Cir. 2013) (holding taxpayer was allowed to retroactively increase a claimed bad-debt deduction in amount necessary to account for a charge-off). As such, it is difficult to appreciate how arguable inconsistencies between collection efforts and tax treatment might aid Haney's waiver argument.

Haney also emphasizes that the act of charging off a debt and sending a charge-off statement relieves the creditor of the obligation to send periodic statements complying with the disclosure requirements of the Truth in Lending Act ("TILA") and Regulation Z. TILA and its regulations, however, are concerned with adequately communicating contractual terms addressing interest and finance charges on consumer loans; they are not designed for the general communication of state law to consumers or to govern the state-law treatment of general claims for liquidated sums. See, e.g., Peters, No. 14-0488-CV, 2014 WL 4854658, at *2 (W.D. Mo. Sept. 30, 2014) ("The . . . context of [Regulation Z, 12 C.F.R. § 226.5(b)(2)(I),] and the enabling statutes suggest otherwise, as they regulate disclosure of interest and finance charges imposed by the consumer's loan agreement; the regulation is not targeted toward disclosure of the fixed rate of interest states routinely impose on debts prior to judgment."). Nothing inherent in the process of charging off a debt precludes a claim for statutory interest, and Missouri's prejudgment interest statute does not expressly preclude statutory prejudgment interest following a waiver of contractual interest. PRA and Gamache's demands for such interest, therefore, were not

-15-

actionable misrepresentations or unfair or unconscionable collection methods under 15 U.S.C. § 1692e or § 1692f, respectively.

Although we hold statutory prejudgment interest remains available as a general matter, Haney raises separate, additional challenges. First, he notes that Gamache's letters on the HSBC account and PRA's complaint on the Wal-Mart account sought prejudgment interest for periods of time prior to PRA's purported acquisitions of the debts. He appears to argue that, even if statutory interest might otherwise be available to PRA, it is not available for the period of time following charge-off and preceding assignment. Second, he argues Missouri Revised Statutes § 408.020 requires a demand to trigger the accrual of statutory prejudgment interest. According to Haney, Gamache and PRA made no demand for prejudgment interest on the HSBC account prior to Gamache's April 11, 2013 letter, and PRA made no demand on the Wal-Mart account prior to filing the state court complaint. Thus, Haney argues, the attempt to collect prejudgment interest for periods of time prior to these communications supports his FDCPA claims.

The defendants argue these issues were not raised below and cannot be raised on appeal. We need not rely on defendant's waiver argument, because we find Haney's position as to the timing issue or a demand requirement is without merit.[8] Regarding the timing of assignments, PRA obtained the same rights as held by the original creditors. See Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 128 (Mo. 2010) (en banc) ("The only rights or interests an assignee acquires are those the assignor had at the time the assignment was made. Because an assignee merely steps into the shoes of the assignor, an assignee must allege facts showing that the assignor would be entitled to relief." (citation omitted)); Cordry v. Vanderbilt

_____

[8]At page ten of the resistance to the defendants' motion for judgment on the pleadings, Haney asserted, "[PRA], therefore, at the very least was attempting to collect interest from a point in time prior to its acquisition of the debt." It does not appear Haney raised below the issue of a section 408.020 demand requirement.

Mortg. & Fin., Inc., 445 F.3d 1106, 1111 (8th Cir. 2006) (Missouri assignee "steps into the shoes").  Because we hold the original creditors' acts of  charging off the debts did not effectuate waivers of statutory interest, the assignments of the debt to PRA did not "create" the entitlement to statutory prejudgment interest.   The assignments merely transferred any entitlement to such interest that otherwise existed.  See Renaissance Leasing, LLC, 322 S.W.3d at 128.

Regarding the necessity of a demand, Haney cites no authority for the propositions that (1) any required "triggering" demand itself must reference prejudgment interest; or (2) an assignee must itself make a demand separate from an earlier demand issued to the debtor by the original creditor/assignor.  A review of Missouri law suggest that where a demand is required, the availability of statutory prejudgment interest depends upon a demand for the amount owed, not a demand specifically for statutory interest.  Ogg v. Mediacom LLC, 382 S.W.3d 108, 119 (Mo. Ct. App. 2012) ("The demand need not be in any certain form . . . [and] need not make a specific request for prejudgment interest." (quoting Rois v. H.C. Sharp Co., 203 S.W.3d 761, 767 (Mo. Ct. App. 2006))); see also Phoenix Assurance Co. of N.Y. v. Appleton City, 296 F.2d 787, 796 (8th Cir. 1961) ("It appears to us that Section 408.020 makes no requirement that a specific demand be made for interest and that a demand for payment upon an account is sufficient to start the running of interest thereon."); McDonald v. Loewen, 130 S.W. 52 (Mo. Ct. App. 1910) ("In the absence of special agreement as to interest or as to the time of payment, the interest is payable on a debt from the time the principal is demanded.").  Further, it is undisputed that Haney received monthly periodic statements from the original creditors prior to charge-off, and at least as to the Wal-Mart account, the charge-off statement itself is attached to the pleadings.  Haney received a demand for payment of his accounts when due.  We conclude any demand requirement that exists as a precondition to the accrual of statutory prejudgment interest was satisfied by the original creditors' demands upon Haney.

-17-

## C. Interest-on-Interest

In appealing the dismissal of Count II and Count IV, Haney alleges that Gamache's attempt to collect statutory prejudgment interest on the interest portion of the charge-off balances violates Missouri restrictions on the collection of compound interest. He thus contends that Gamache falsely represented the amount of a debt, in violation of § 1692(e)(2)(A), and unfairly attempted to collect an amount that was not permitted by law, in violation of § 1692f(1). In this regard, we conclude that Haney has stated a claim that should have survived a motion for judgment on the pleadings.

Missouri Revised Statutes Section 408.080 permits parties to "contract, in writing, for the payment of interest upon interest[.]" See also Lammers v. Lammers, 884 S.W.2d 389, 393 (Mo. Ct. App. 1994) ("Compound interest is interest upon interest; where accrued interest is added to the principal sum and the whole treated as a new principal for the calculation of interest for the next period." (citation omitted)). But, as just discussed, the interest at issue is statutory, not contractual. Gamache cites no statutory provisions permitting a creditor or its assignee to collect compound interest by assessing *statutory* prejudgment interest on the portion of a liquidated sum comprising already accrued contractual interest.

Gamache relies on Boatmen's First National Bank of Kansas City v. Bogina Petroleum Engineers, 794 S.W.2d 703 (Mo. Ct. App. 1990), for the proposition that statutory interest may accrue on a liquidated sum that includes initial, contract-based interest. Boatmen's, however, dealt exclusively with the availability of postjudgment interest on a judgment stemming from an underlying obligation that included both principal and interest. 794 S.W.2d at 706 ("This court . . . holds that the judgment bears interest even though it contains an amount designated as interest."). In Boatmen's, the court expressly distinguished postjudgment interest from prejudgment interest, describing prejudgment interest as part of the underlying compensatory award and postjudgment interest as a statutory creation to compensate the judgment

-18-

creditor for any delay in the immediate payment of the liquidated judgment amount. Id. at 705 ("[P]rejudgment interest is awarded on the theory that it is necessary in order to give full compensation for the loss sustained. On the other hand post-judgment interest, or interest on the judgment, is awarded on the theory that it is a penalty for delayed payment of the judgment."). The court proceeded to emphasize that the Missouri statute authorizing compound interest, Missouri Revised Statutes Section 408.080, "is designed as a regulation of interest on contracts and does not purport to apply to interest on judgments." Id. at 706. The court also noted that the postjudgment interest statute, section 408.040, "does not contain any prohibition against a judgment bearing interest which is made up partly of prejudgment interest."[9] Id. Simply put, Boatmen's relied strongly on what it characterized the unique nature of postjudgment interest to reach its holding. The absence of statutory authority for non-contractual prejudgment compound interest, coupled with Boatmen's clear and emphatic discussion distinguishing between postjudgment and prejudgment interest, persuades us that Missouri statutory prejudgment interest cannot be assessed on already accrued interest.

_____

[9]Missouri's postjudgment interest statute, as in place at the time of the letters and collection actions in this case, was materially the same as the statute at issue referenced in Boatmen's. It provided simply, "In all nontort actions, interest shall be allowed *on all money due* upon any judgment or order of any court from the date judgment is entered by the trial court." Mo. Rev. Stat § 408.040.1 (2013) (emphasis added). The statute did not parse judgments based upon the underlying sources and natures of sums that ultimately become reflected in a judgment. Missouri has since amended section 408.040 to expressly clarify that postjudgment interest applies to *all sources* of prejudgment amounts. See Mo. Rev. Stat. § 408.040.1 (2015) ("Judgments shall accrue interest on the judgment balance as set forth in this section. The 'judgment balance' is defined as the total amount of the judgment awarded on the day judgment is entered including, but not limited to, principal, prejudgment interest, and all costs and fees.").

The question remains whether Haney has stated a plausible FDCPA claim through his allegation of an attempt to collect an interest-on-interest amount not allowed as a matter of state law.[10]  As a general matter, state collection law and the FDCPA are not coextensive—sections 1692e and 1692f are not federal enforcement mechanisms intended to reach every violation of state collection law.  See Carlson v. First Revenue Assurance, 359 F.3d 1015, 1018 (8th Cir. 2004) ("The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation.").  In Carlson, for example, we held that violation of a state law regarding collection agencies' maintenance of licenses at all physical locations did not also comprise a violation of the FDCPA.  We stated, "even if [the debt collector] was violating Minnesota law . . . that violation would not constitute a false or misleading representation." Id.; see also Gallego v. Northland Grp., Inc., 814 F.3d 123, 127 (2d Cir. 2016) (noting that every circuit to address the issue has held the FDCPA does not make "violations of state and local debt collection statutes . . . per se actionable under the FDCPA.").  In Gallego, the Second Circuit noted the FDCPA's express preemption language reached only state laws inconsistent with the FDCPA, thus establishing conclusively that "state laws [may] offer protections to consumers that go beyond the FDCPA itself." Gallego, 814 F.3d at 127.

---

[10]We note that Haney cites Wilhelm v. Credico, Inc., 519 F.3d 416, 420–21 (8th Cir. 2008), to argue that the Eighth Circuit has already held, specifically, that an impermissible attempt to collect statutory prejudgment interest on sums that include contractual interest amounts to an FDCPA violation. In Wilhelm, however, we made no such holding.  Rather, we addressed the potential application of the § 1692k(c) bona fide error defense, and merely noted that "for purposes of this appeal" the viability of such a claim was undisputed.  Wilhelm, 519 F.3d at 420 ("For purposes of this appeal, it is undisputed that the amount demanded in [the] letter . . . included a demand for payment of interest on past-due interest; that this portion of the asserted debt violated N.D.C.C. § 47-14-09(1); and that threatening to sue to collect a debt computed in violation of state law is prohibited by 15 U.S.C. § 1692e(5).").

A thorough examination of the dividing line between state law violations that are and are not actionable pursuant to the FDCPA is beyond the scope of this case and far beyond the issues briefed by the parties. Looking only at a violation like PRA and Gamache's impermissible demand for compound interest, our opinion in Duffy, 215 F.3d at 874, coupled with the unsophisticated-consumer standard, show Haney has articulated actionable claims.

In Duffy, we addressed several different alleged FDCPA violations stemming from three demand letters related to dishonored checks. 215 F.3d at 874–75. We held demands for unauthorized fees, penalties, or even "slightly overstated" interest may give rise to claims for violations of § 1692e, § 1692e(5), or § 1692f(1). Id. In particular, we held a debt collector's demand for a "civil penalty in the amount of $100" violated § 1692(e) as a misleading representation of state law because the relevant state law only permitted a "penalty of *up to* $100 or up to 100 percent of the value of the [dishonored] check, whichever is greater" and only if the debt collector actually pursued the matter "to hearing by the court." Id. at 874. We also held the debt collector violated § 1692e(5)'s prohibition on threatening to take "action that cannot legally be taken" when threatening to seek attorneys fees if required to pursue the matter to court. Id. And finally, we held the three letters' "interest calculations" which "were only slightly overstated" comprised an attempt to collect interest not permitted by law in violation of § 1692f(1) even though the interest amounts were only misstated by $1.29, $1.84, and $0.65, respectively.

Looking at these holdings, our opinion reasonably can be interpreted as establishing two rules: (1) there exists no *de minimis* exception to FDCPA liability based upon low dollar amounts; and (2) debt collectors' false representations about the availability of remedies or amounts owed under state law, like representations of fact, are to be viewed through the unsophisticated-consumer standard and may be actionable pursuant to the FDCPA. Applying these holdings to the present case,

Haney has articulated viable § 1692e and § 1692f(1) claims by alleging false statements and collection attempts regarding the availability of compound interest.

## D. PRA's Prayers for Relief in Litigation

Haney also appeals the district court's dismissal of claims against PRA arising from PRA's assertion in prayers for relief in litigation of a right to recover statutory prejudgment interest on accrued contractual interest. In its petition filed against Haney in Missouri circuit court, PRA included two prayers for relief asking the court to enter judgment in a sum certain, "together with prejudgment interest, as allowed by law, at the statutory rate from and after July 20, 2010, plus interest on any judgment . . . at the rate of 9% per annum." The district court thought it "doubtful" that a request for relief in the "wherefore" clauses of PRA's petition could violate the FDCPA, but ultimately concluded that PRA was entitled to the interest claimed. Haney argues that because collection of interest on interest was not permitted by Missouri law, PRA's petition included a false representation and constituted an unfair or unconscionable means to collect a debt, in violation of §§ 1692e and 1692f(1).

Although we have concluded that PRA cannot collect the disputed interest on interest under Missouri law, the claim for that amount in the petition was a statement directed to the court, and it was a good faith legal position on a point of unsettled Missouri law. Indeed, the district court agreed with PRA's legal position. We reject Haney's contention that the "wherefore" clauses were false representations or an unfair or unconscionable means to collect a debt within the meaning of the FDCPA. As several courts have recognized, the statute does not forbid a party from stating its good faith legal position to a court in a prayer for relief. Riermersma v. Messerli & Kramer, P.A., No. 07-3898, 2008 WL 2390729, at *2 (D. Minn. June 9, 2008) ("A prayer for relief is '[a] request addressed to the court and appearing at the end of a pleading.' Black's Law Dictionary 1213 (8th ed. 2004). As such, a request . . . within the prayer for relief is not directed at the debtor. Rather, it is part of the

ultimate satisfaction sought by a plaintiff and asked of the court."); <u>Winn v. Unifund CCR Partners</u>, No. 06-447, 2007 WL 974099, at *3 (D. Ariz. Mar. 30, 2007) ("Even the 'least sophisticated debtor' would understand that this amount . . . is what his creditor would like the court to conclude is reasonable.  He might have to pay it; he might not.  The prayer for relief is not false, deceptive, misleading or unfair."); <u>Argentieri v. Fisher Landscapes, Inc.</u>, 15 F. Supp. 2d 55, 61 (D. Mass. 1998) ("A prayer for relief in a complaint, even where it specifies the quantity of attorney's fees, is just that: a request to a third party—the court—for consideration, not a demand to the debtor himself. ").

This court in <u>Hemmingsen v. Messerli & Kramer, P.A.</u>, 674 F.3d 814 (8th Cir. 2012), declined to rule categorically that statements to a court are never actionable under § 1692e, but did not suggest that a good faith prayer for relief was the sort of "abusive, deceptive, or unfair means of debt collection" that might support a claim. <u>Id</u>. at 818.  Rather, we signaled a willingness to consider "a § 1692e complaint alleging that the defendant debt collector lawyer routinely files collection complaints containing intentionally false assertions of the amount owed, serves the complaints on unrepresented consumers, and then dismisses any complaint that is defaulted." <u>Id</u>. PRA's prayer for relief is a far cry from the unfair and abusive scenario contemplated in <u>Hemmingsen</u>.  The district court correctly dismissed Count I and Count III against PRA.

### E.  Lack of Clarity in Gamache's Collection Letters

Haney argues that Gamache's failure to identify HSBC, cite the $740.16 account balance, or explain the various sums demanded in the three letters resulted in a failure to comply with § 1692g(a)(1) and were, in collective effect, misleading to an unsophisticated consumer in violation of § 1692e.  Haney did not assert a claim based on § 1692g(a) below.  We nevertheless find § 1692g(a) material to our analysis because it sets forth what a debt collector must disclose in an initial communication

-23-

(or in a timely follow-up notice).  See *supra* n. 5.  Here, Gamache provided the required information and, aside from including an impermissible claim for interest-on-interest in the amount demanded, Gamache did not relay any inaccurate information. Gamache complied with the requirements to truthfully identify itself and the party it represented, to whom the debt was owed.  Gamache also complied with the requirement to notify Haney of the option to challenge the validity of the debt and to offer to identify the original creditor.  While Gamache could have disclosed more information in its initial communication, it was not required to do so.

Further, § 1692g(a)(5) specifically anticipates that an initial communication may omit the identity of the original debtor.  As such, Gamache's failure to reference HSBC in the April 11, 2013 letter cannot serve as a basis for this claim.  Examining Haney's claim, all he has alleged is that the amount demanded was confusing or misleading when coupled with the failure to identify HSBC.  As such, and given our conclusion that Haney may proceed with his interest-on-interest claim against Gamache, there is no separate ground on which to reverse the district court's dismissal of this claim.[11]

---

[11]Haney argues on appeal that Gamache and PRA violated 15 U.S.C. § 1692e(5) by threatening "to take [an] action that cannot legally be taken or that is not intended to be taken."  Haney specifically argues on appeal that Gamache's request for post-charge-off interest in the three letters on the HSBC account, followed by an absence of any such demand in the subsequent collection action, shows Gamache made threats without the requisite intent to take the threatened action.

Haney, however, raised no "intent"-based § 1692e(5) claim in his complaint nor in his district court resistance to the motion to dismiss, and we generally do not address new claims on appeal.  That having been said, to the extent his new § 1692e(5) argument rests on the assertion that Gamache and PRA threatened action that could not legally be taken, we note that the mere omission of a claim for prejudgment interest in the state-court complaint on the HSBC account does not establish the absence of a then-present intent to pursue such relief at the time Gamache sent the collection letters.

-24-

III.

We reverse the judgment of the district court dismissing Haney's claims against Gamache in Count II and Count IV based on the attempted collection of statutory prejudgment interest on accrued contractual interest. We affirm the judgment of the district court in all other respects and remand for further proceedings consistent with this opinion.

MELLOY, Circuit Judge, Concurring in Part and Dissenting in Part.

I concur in the opinion other than part II.D. I would hold the demand for interest upon interest in PRA's complaint served as a false representation and constituted an unfair or unconscionable means to collect a debt, in violation of §§ 1692e and 1692f(1). Accordingly, I would reverse the dismissal of this claim against PRA.

PRA argues on appeal that use of the language "as allowed by law" shows it sought interest in the complaint addressing the Wal-Mart account only to the extent permitted by applicable law. PRA also argues placement of its demand in the prayer for relief makes the demand an aspirational request to the court rather than a potential misrepresentation to the debtor. As support for these conclusions, PRA cites several district court cases arguably consistent with its position. In reality, these arguments are specific examples of broader arguments our court has wrestled with in the past regarding the applicability of the FDCPA to various litigation-related activities and communications. See, e.g., Hemmingsen v. Messerli & Kramer, P.A., 674 F.3d 814, 818 (2012) ("[The Supreme Court in] Heintz[ v. Jenkins, 514 U.S. 291, 299 (1995)] answered the question whether the FDCPA applies to a lawyer who regularly collects consumer debts through litigation. But the circuit courts have struggled to define the extent to which a debt collection lawyer's representations to the consumer's attorney

-25-

or in court filings during the course of debt collection litigation can violate §§ 1692d–f.").

In Hemmingsen, we rejected any sort of categorical approach that might deem "false statements not made directly to the consumer debtor" immune from FDCPA scrutiny. Id. at 818. Rather, we adopted "a case-by-case approach," id. at 819, noting representations to attorneys or in pleadings arise "in a wide variety of situations," id. at 818, that "routinely come to the consumer's attention and may affect his or her defense of a collection claim," id. We ultimately held in Hemmingsen that the representations at issue, made in a summary judgment memorandum and affidavit, did not violate the FDCPA because they were made long after litigation commenced and were not representations likely to deter the debtor from mounting a "vigorous defense." Id. at 819. We also noted the FDCPA was not intended to destroy creditors' access to judicial remedies, and as such, creditors should be allowed to advance their arguments and attempt to present evidence without fearing FDCPA liability merely because a state court ultimately rejects a statement as unsupported in a summary judgment proceeding. Id.

As per Hemmingsen, we must assess how the hypothetical unsophisticated consumer will perceive the representations in a letter or complaint. I conclude the placement and wording at issue in the present case are not shielded from further scrutiny pursuant to the FDCPA. When receiving a demand letter, a debtor faces many choices: take no action, seek clarification, pay the amount demanded (or some other amount), seek relief or renegotiation, or hire counsel. Similarly, when receiving a civil complaint in a collection action, the debtor may take no action and accept a default judgment, mount defenses with varying degrees of vigor, proceed *pro se*, or proceed with counsel. The demands and allegations in the letters and complaints do not exist in a vacuum. They may well arrive in the hands of a debtor and affect a debtor's choice of action—deterring the debtor from mounting a defense or employing counsel. See Hemmingsen, 674 F.3d at 818 ("Though rarely made

-26-

'directly' to the consumer debtor, such representations routinely come to the consumer's attention and may affect his or her defense of a collection claim."). Further, such representations made to a consumer prior to the consumer's retention of counsel on the matter clearly are subject to the unsophisticated-consumer standard. See Powers, 776 F.3d at 573–74.

Viewed in this light, understood as a statement to the consumer as well as to the court, and reasonably interpreted in favor of the plaintiff, PRA's use of the phrase "as allowed by law," within the context of the larger phrase "as allowed by law, at the statutory rate from and after July 20, 2010," should not be limited to the narrow and defendant-friendly construction meaning "if allowed by law." At the motion to dismiss stage, I am reluctant to presume the phrasing represents a good faith assertion of a legal theory only to the court. An unsophisticated consumer, without adopting an idiosyncratic or bizarre interpretation, easily could view the phrase "as allowed by law" as an affirmative representation that the relief or amount sought is, in fact, allowed. See Duffy, 215 F.3d at 874–75 (holding representations about the availability of remedies under state law can be actionable pursuant to the FDCPA). Simply put, PRA did not make an open-ended demand (language seeking "such additional relief as the court may allow") or clearly articulate hedging language (language such as "if allowed by law" or "to the extent a court may find it to be allowed by law") sufficient to pass muster under the unsophisticated-consumer standard. See, e.g., Stratton, 770 F.3d at 451 (rejecting the argument that a demand in a complaint was merely a good faith argument to the court and concluding, "Saying [the debtor] owed $2630.95 plus whatever interest the court chooses to award is simply not the same as saying that [the debtor] owed $2630.95 plus 8% interest from the date [the original creditor] charged off her account.").

Similarly, the placement of a demand in a civil complaint's prayer for relief, styled as a concluding "whereas" clause, does not necessarily take the demand outside the scope of the FDCPA's protections. In so holding, I would reject the conclusion

-27-

of the majority and the several courts cited above indicating that such a clause is a non-actionable request to the court rather than an actionable debt-collection activity. Rather, as per the instruction of <u>Hemmingsen</u>: we may not presume a statement categorically non-actionable pursuant to the FDCPA merely because it is a statement to a third party. <u>Hemmingsen</u>, 674 F.3d at 818. Here the prayed-for relief stated "as allowed by law" in connection with a statutory rate of interest from a certain date. The prayer for relief was served upon the debtor and was not a vague demand for whatever the court might deem appropriate and consistent with applicable law. We therefore should not cut off Haney's claim at this early stage.

_____